UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARK WILLIAMS,

                  Plaintiff,                                  Hon. Wendell A. Miles

v.                                                Case No. 1:06-CV-427

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.
_____/


## REPORT AND RECOMMENDATION

        This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C.

§ 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim

for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  Section 405(g)

limits the Court to a review of the administrative record, and provides that if the Commissioner's

decision is supported by substantial evidence, it shall be conclusive.

        The Commissioner determined that Plaintiff is not disabled as defined by the Act.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit

proposed findings of fact and recommendations for disposition of social security appeals, the

undersigned recommends that the Commissioner's decision be **reversed and this matter remanded**

**for further factual findings**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 48 years of age at the time of the ALJ's decision. (Tr. 20). He completed the tenth grade and worked previously as a cook, dishwasher, and laborer. (Tr. 20, 77, 82, 85-91).

Plaintiff applied for benefits on May 12, 2004, alleging that he had been disabled since February 17, 2004, due to depression, diabetes, high blood pressure, hypertension, and fatigue. (Tr. 60-62, 76). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 31-59). On June 6, 2005, Plaintiff appeared before ALJ David Wurzul, with testimony being offered by Plaintiff and vocational expert, Mary Jesko. (Tr. 336-78). In a written decision dated March 30, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 19-30). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 3-5). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## MEDICAL HISTORY

On July 11, 2003, Plaintiff participated in an a cardiovascular stress test, the results of which were "normal. . .with no remarkable EKG changes in an individual who has a fair level of exercise tolerance for age." (Tr. 121).

3

On April 27, 2004, Plaintiff participated in an ophthalmology examination, the results of which revealed "no diabetic change" in either eye.  (Tr. 174).

On June 22, 2004, Plaintiff began treating with therapists at Meridian Professional Psychological Consultants, P.C.  (Tr. 289-96).

On July 24, 2004, Plaintiff participated in a consultive examination conducted by John Jeter, Ph.D.  (Tr. 221-27).  With respect to Plaintiff's activities of daily living, Dr. Jeter noted the following:

> The patient reports he knows how to clean the house, he shops for simple items only, cooks simple meals, does the laundry, takes out the trash, runs errands and assists with childcare.  He attempts to do yard work but gets fatigued.  He does his own grooming, hygiene, bathing and dressing activities independently.  He can drive but he doesn't.  Church is his social group.  He reports that he does not have good skills or ability with money management.  His wife does this.  He is not seen as a good candidate for benefits management should benefits be awarded.  His math skills also reflect his poor ability to manage binary operations required for money management.  He has only 2nd grade math skills.

(Tr. 223).

Plaintiff exhibited "good" contact with reality and his thoughts were organized, logical, and easy to follow.  (Tr. 224).  Plaintiff's motor activity was within normal limits and there was no evidence that he was exaggerating or minimizing his symptoms.  *Id.*

Plaintiff reported that he began to experience depression and anxiety following his mother's death two years previously.  (Tr. 225).  Plaintiff reported that he experienced poor concentration, chronic fatigue, crying spells, shortness of breath, dizziness, and fear of losing control.  *Id.*  Plaintiff participated in the WRAT-3 evaluation, the results of which revealed that his reading and math skills were at the second grade level.  (Tr. 226).  Dr. Jeter concluded that Plaintiff was not

4

suffering from major depression or dysthymia, but was experiencing adjustment disorder with depression and anxiety. Plaintiff's GAF score was rated as 65-68.[1]  *Id.*

On August 8, 2004, Rom Kriauciunas, Ph.D. completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 232-45). Determining that Plaintiff suffered from adjustment disorder with depression and anxiety, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 233-41). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 242). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced extended episodes of decompensation. *Id.*

Dr. Kriauciunas also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 228-30). Plaintiff's abilities were characterized as "moderately limited" in four categories. With respect to the remaining 16 categories, however, the doctor reported that Plaintiff was "not significantly limited." *Id.*

On September 8, 2004, Plaintiff participated in a consultive examination conducted by Dr. Helene Jones. (Tr. 247-52). Plaintiff reported that he was suffering from diabetes, back pain,

---

[1]  The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning.  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV).  A score of 65-68 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

and depression.  (Tr. 247).  Plaintiff reported that he "does his activities of daily living, but otherwise does not participate much in the family life or chores."  Plaintiff also reported that "he sleeps most of the time during the day and stays up all night watching TV because he is depressed."  *Id.*  Plaintiff exhibited "a flat affect consistent with depression." (Tr. 248).  Plaintiff noted that he was presently treating with a psychiatrist.  When Plaintiff was asked "if he thought he was doing better, his response was 'I don't know.'"  Dr. Jones concluded that Plaintiff was suffering from "depression which appears to be quite active."  *Id.*

On November 9, 2004, Dr. Daniel deVries and Joe Webster, a psychiatrist and therapist with Meridian Professional Psychological Consultants respectively, reported that "[t]he severity of [Plaintiff's] depressed mood has reached the point of suicidal thinking, with sleep disturbance, chronic exhaustion, and feelings of despair and hopelessness and loss." (Tr. 261).  The doctor observed that "[o]ver the course of six months, [Plaintiff] has made slow but steady progress in his commitment to treatment."  In this respect, Dr. deVries noted that Plaintiff was "trying hard to control his diabetes and back pain with stretching and diet" and, moreover, "started a walking program to rebuild his exercise tolerance."  Plaintiff reported that his "sleep and mood have improved somewhat and his motivation is getting better."  *Id.*  With respect to Plaintiff's ability to perform work related duties, the doctor concluded that:

> At most, [Plaintiff] is able to manage some simple household chores that do not involve bending or lifting, chores that can be done at his very slow pace.  At this stage, despite six months of treatment, it is hard to envision [Plaintiff] reaching the point of managing any regular job for eight hours a day in the near future.  Even if the depressive symptoms were to lift further, he would face medical and basic physical hurdles given his weight (297# on a 5' 9" frame) and back problems that may seriously impair his ability to function.

6

(Tr. 262).

On March 21, 2005, Dr. Harold Roth reported that Plaintiff was suffering from chronic diabetes, hyperlipidemia, reflux esophagitis, hypertension, and morbid obesity.  (Tr. 298). As a result, the doctor concluded that Plaintiff "is not a candidate to go back to work in the near or distant future."  *Id.*

On March 25, 2005, Dr. deVries and Mr. Webster completed a report regarding Plaintiff's condition.  (Tr. 301-02).  They reported that over the previous nine month period Plaintiff exhibited "signs of a slow recovery," but that his brother's recent death "has triggered a renewal of grief and depressive symptoms."  (Tr. 301).  Plaintiff's treaters further reported that Plaintiff's "trouble committing to a healthy diet and activity probably represents a passive wish to join his mother as much as it involves pervasive family patterns of poor health."  (Tr. 302).  They characterized Plaintiff's prognosis as "guarded" and further concluded that "recovery would probably involve years rather than months."  (Tr. 301).

On May 26, 2005, Dr. deVries and Mr. Webster completed a report regarding Plaintiff's mental residual functional capacity.  (Tr. 303-09).  They reported that Plaintiff exhibited the following symptoms: (1) anhedonia or pervasive loss of interest in almost all activities; (2) blunt, flat, or inappropriate affect; (3) generalized persistent anxiety; (4) mood disturbance: (5) recurrent obsessions or compulsions which are a source of marked distress; (6) emotional lability; and (7) emotional withdrawal or isolation.  (Tr. 304-05).  Plaintiff's treaters reported that Plaintiff's impairments would cause him to be absent from work "more than four days per month."  (Tr. 308).

They rated Plaintiff's then current GAF score as 40 and his highest GAF score within the last year as 40-50.[2]  (Tr. 303).

Dr. deVries and Mr. Webster also assessed Plaintiff's abilities in 16 categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.  (Tr. 305-06).  Plaintiff's abilities were characterized as "limited but satisfactory" in two categories.  His abilities were characterized as "seriously limited, but not precluded" in six categories.  With respect to the remaining eight categories, Plaintiff's abilities were characterized as either "unable to meet competitive standards" or "no useful ability to function."  *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A.  Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability.  *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3]  If the Commissioner can make a

---

[2]  A GAF score of 40 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood."  DSM-IV at 34.  A GAF score of 41-50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning."  *Id.*

[3] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

dispositive finding at any point in the review, no further finding is required.  *See* 20 C.F.R. §§ 404.1420(a), 416.920(a).  The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity.  *See* 20 C.F.R. §§ 404.1545, 416.945.

## B.  The ALJ's Decision

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) obesity; (2) non-insulin-dependent diabetes mellitus; (3) arthritis in both knees; (4) bilateral flat feet; (5) hypertension, well controlled on medication; and (6) major depressive disorder.  (Tr. 23). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1.  *Id.*  The ALJ determined that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations.  (Tr. 23-28).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1.  The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy.  *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

9

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary[4] work activities subject to the following limitations: (1) he cannot climb ladders, ropes, or scaffolds; (2) he can only occasionally climb ramps and stairs; (3) he can only occasionally balance, stoop, or crouch; and (4) he must avoid concentrated exposure to dangerous moving machinery, electric shock, radiation, and unprotected heights. (Tr. 23). With respect to Plaintiff's mental impairments the ALJ further concluded that Plaintiff is limited to performing unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, or the public. (Tr. 23-24).

The ALJ found that Plaintiff was unable to perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform

---

[4] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

10

specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert Mary Jesko.

The vocational expert testified that there existed in Michigan approximately 60,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 373-76). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (a finding that 2,500 jobs existed which the claimant could perform constituted a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (the existence of 1,800 jobs which the claimant could perform satisfied the significance threshold). Accordingly, the ALJ concluded that Plaintiff was not disabled.

### a.    The ALJ Failed to Properly Evaluate the Opinion of Plaintiff's Treating Physician

As detailed above, Plaintiff began participating in counseling with Meridian Professional Psychological Consultants on June 22, 2004. On November 9, 2004, Dr. deVries and Mr. Webster reported that "[t]he severity of [Plaintiff's] depressed mood has reached the point of suicidal thinking, with sleep disturbance, chronic exhaustion, and feelings of despair and hopelessness and loss." (Tr. 261). Plaintiff's treaters observed that while Plaintiff had made "slow

11

but steady progress in his commitment to treatment. . .it is hard to envision [Plaintiff] reaching the point of managing any regular job for eight hours a day in the near future."

On March 25, 2005, Dr. deVries and Mr. Webster reported that Plaintiff had exhibited "signs of a slow recovery," but that his brother's recent death "has triggered a renewal of grief and depressive symptoms." They characterized Plaintiff's prognosis as "guarded" and further concluded that "recovery would probably involve years rather than months."

In a report dated May 26, 2005, Dr. deVries and Mr. Webster observed that Plaintiff exhibited the following symptoms: (1) anhedonia or pervasive loss of interest in almost all activities; (2) blunt, flat, or inappropriate affect; (3) generalized persistent anxiety; (4) mood disturbance: (5) recurrent obsessions or compulsions which are a source of marked distress; (6) emotional lability; and (7) emotional withdrawal or isolation.  (Tr. 304-05).  Plaintiff's then current GAF score was rated as 40 and his highest GAF score within the last year was rated as 40-50.

Dr. deVries and Mr. Webster also assessed Plaintiff's abilities in 16 categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation.  Plaintiff's abilities were characterized as "limited but satisfactory" in two categories.  His abilities were characterized as "seriously limited, but not precluded" in six categories.  With respect to the remaining eight categories, Plaintiff's abilities were characterized as either "unable to meet competitive standards" or "no useful ability to function."  The ALJ recognized that the opinions expressed by Dr. deVries (one of Plaintiff's treating physicians), "if credible, would preclude [Plaintiff] from performing any substantial gainful activity on [a] routine or sustained basis mandating a finding of disability."  (Tr. 20).

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). Accordingly, the medical opinions and diagnoses of treating physicians are given substantial deference, and if such opinions and diagnoses are uncontradicted, complete deference is appropriate. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).

Nonetheless, the ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994). As the Sixth Circuit recently made clear, however, when an ALJ chooses to accord less than controlling weight to the opinion of a treating physician, he must adequately articulate his rationale for doing so. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-47 (6th Cir. 2004). As the *Wilson* court held:

> If the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors - namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source - in determining what weight to give the opinion.
>
> Importantly for this case, the regulation also contains a clear procedural requirement: "We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion." A Social Security Ruling explains that, pursuant to this provision, a decision denying benefits

13

> "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Id.* at 544 (internal citations omitted).

As the *Wilson* court further held, failure to comply with this requirement is not subject to harmless error analysis. *Id.* at 546-47. As the court expressly stated:

> A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely. . . .To hold otherwise, and to recognize substantial evidence as a defense to non-compliance with § 1527(d)(2), would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory.

*Id.* at 546 (internal citations omitted).

The ALJ in this case declined to accord controlling weight to Dr. deVries opinion regarding Plaintiff's non-exertional limitations, concluding that such was "controverted by substantial evidence in the record; that is, the findings of a consulting clinical psychologist, John Jeter, Ph.D." (Tr. 21). The ALJ further concluded that Dr. deVries' opinions were "also inconsistent with his own treatment records." The ALJ's conclusions in this regard, however, are not supported by substantial evidence.

The ALJ found it significant that Dr. Jeter "found [Plaintiff] to have only an adjustment disorder with anxiety and gave him a current Global Assessment of Functioning (GAF) of 65 to 68, which is clearly inconsistent with the presence of a disabling mental impairment." *Id.* First, Dr. Jeter did not diagnose Plaintiff with "adjustment disorder with anxiety," but instead

14

diagnosed Plaintiff as suffering from "adjustment disorder with *depression* [and] anxiety." (Tr. 226). Thus, the ALJ's finding that Dr. Jeter observed no evidence that Plaintiff was suffering from depression is directly contradicted by the record. As for Dr. Jeter's assessment of Plaintiff's GAF score, such is not supported by the record. A GAF score of 65-68 signifies that an individual is experiencing only "mild" symptoms and is "generally functioning pretty well." While the Court concludes (as discussed below) that evidence of Plaintiff's disability is less than compelling, there is no support in the record for the conclusion that Plaintiff was experiencing only mild symptoms.

The ALJ also found significant the fact that Plaintiff "reported [to Dr. Jeter] activities of daily living which were well within normal limits from both a physical and psychological standpoint." (Tr. 21). As noted above, Plaintiff reported to Dr. Jeter that he "shops for simple items only, cooks simple meals, does the laundry, takes out the trash, runs errands and assists with childcare. . .attempts to do yard work but gets fatigued. . .[and] does his own grooming, hygiene, bathing and dressing activities independently." (Tr. 223). While the performance of such activities reveals that Plaintiff is capable of performing certain limited activities in a home environment, such hardly supports the conclusion that Plaintiff is capable of performing the physical, and more importantly the non-physical, aspects of substantial gainful activity on a sustained and ongoing basis.

The ALJ also discredited Dr. deVries' opinions because such were allegedly "inconsistent with his own treatment records." (Tr. 21). This conclusion is based upon a selective and incomplete assessment of the record. As the ALJ observed, in his November 9, 2004 report, Dr. deVries noted that Plaintiff had not "had any psychiatric hospitalizations or made any suicide attempts" and "had made slow, but steady, progress over the past six months of treatment." *Id.* While the ALJ's observations are accurate, they are woefully incomplete. For example, the ALJ

15

ignored Dr. deVries' observation that Plaintiff was experiencing suicidal thinking, as well as feelings of despair and hopelessness. (Tr. 261). The doctor also observed that "despite six months of treatment, it is hard to envision [Plaintiff] reaching the point of managing any regular job for eight hours a day in the near future." (Tr. 262).

The ALJ also ignored Dr. deVries' subsequent opinions regarding Plaintiff's impairments and his ability to function. In a report dated March 25, 2005, Dr. deVries reported that over the previous nine month period Plaintiff exhibited "signs of a slow recovery," but that his brother's recent death "has triggered a renewal of grief and depressive symptoms." (Tr. 301). The doctor characterized Plaintiff's prognosis as "guarded" and further concluded that "recovery would probably involve years rather than months." *Id.* The ALJ made no mention of this evidence.

In an evaluation dated May 26, 2005, Dr. deVries reported that Plaintiff exhibited the following symptoms: (1) anhedonia or pervasive loss of interest in almost all activities; (2) blunt, flat, or inappropriate affect; (3) generalized persistent anxiety; (4) mood disturbance: (5) recurrent obsessions or compulsions which are a source of marked distress; (6) emotional lability; and (7) emotional withdrawal or isolation. (Tr. 304-05). The doctor rated Plaintiff's then current GAF score as 40 and his highest GAF score within the last year as 40-50.[5] (Tr. 303). The ALJ made no mention of this evidence.

Dr. deVries also assessed Plaintiff's abilities in 16 categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and

---

[5] A GAF score of 40 indicates that the individual is experiencing "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." DSM-IV at 34. A GAF score of 41-50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." *Id.*

16

(4) adaptation.  (Tr. 305-06).  Plaintiff's abilities were characterized as "limited but satisfactory" in two categories.  His abilities were characterized as "seriously limited, but not precluded" in six categories.  With respect to the remaining eight categories, Plaintiff's abilities were characterized as either "unable to meet competitive standards" or "no useful ability to function."  *Id.*  The ALJ likewise ignored this evidence.

In sum, the ALJ's decision to discredit the various opinions of Plaintiff's treating physician over the unsupported opinions expressed by a consulting examiner who examined Plaintiff on only one occasion is not supported by substantial evidence.

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling."  *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and immediately award benefits if all essential factual issues have been resolved and proof of disability is compelling).  While the ALJ's decision fails to comply with the relevant legal standard, there does not exist *compelling* evidence that Plaintiff is disabled.  The Court recommends, therefore, that the Commissioner's decision be reversed and this matter remanded for further factual findings, including but not necessarily limited to, the proper consideration of Plaintiff's non-exertional impairments.

## <u>CONCLUSION</u>

For the reasons articulated herein, the undersigned concludes that the ALJ's decision does not conform to the proper legal standards and is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for further factual findings**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


Date: June 21, 2007                          /s/ Ellen S. Carmody_____
                                            ELLEN S. CARMODY
                                            United States Magistrate Judge